**UNITED DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

MICHAEL FAGGIANO,

                                        Plaintiff,

                                                            DECISION and ORDER

                  -vs-

                                                            03-CV-6070-CJS

EASTMAN KODAK COMPANY,

                                        Defendant.

---

**APPEARANCES**

For the Plaintiff:                    Christina A. Agola, Esq.
                                        730 First Federal Plaza
                                        28 East Main Street
                                        Rochester, NY 14614
                                        (585) 262-3320

For the Defendant:                  Elizabeth Ann Wolford, Esq.
                                        Wolford & Leclair LLP
                                        600 Reynolds Arcade Building
                                        16 East Main Street
                                        Rochester, NY 14614
                                        (585) 325-8005

**INTRODUCTION**

This is an action for retaliation brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Now before the Court is defendant's motion (# 35) for summary judgment and plaintiff's cross-motion (# 47) for leave to file an amended complaint. For the reasons stated below, defendant's motion is granted, and plaintiff's cross-motion is denied.

-1-

**BACKGROUND**

On December 8, 1999, plaintiff Michael Faggiano ("Faggiano") wrote a letter to defendant Eastman Kodak Company ("Kodak") detailing discriminatory conditions he alleged he suffered at his workplace from supervisors Jim Ellison ("Ellison"), Phil Burrows ("Burrows") and Willie Weaver ("Weaver"). In the letter, Faggiano, an American of Italian heritage, explained that for many years he was the subject of ethnic jokes, slurs, and crude drawings. He also explained that despite having worked at all positions in the "14 Room" available to every wage grade from seven to thirteen, he had not received a raise or promotion for almost ten years. Additionally, Faggiano wrote that Ellison referred to him as "whale shit," and, in that regard, had drawn a picture of whales in the ocean, explaining to him in front of other employees, that he was "lower than whale shit." (*See* Faggiano Aff. (Aug. 8, 2004) ¶ 11.)

On December 29, 1999, Faggiano participated in a hearing with Kodak's "Peer Review Panel," pursuant to Kodak's Alternate Dispute Resolution Peer Review Grievance Process. The purpose of this hearing was to address Faggiano's claims of disparate treatment, which he believed were based on his Italian ancestry. At the peer review hearing, Faggiano explained that Ellison had used Italian slurs such as "guinea," "wop," and "dago," in referring to him and had informed him that he would never advance within Kodak as long as Ellison was there. Faggiano claimed to the panel that he was being discriminated against because of his Italian ancestry, and he also indicated that he had been a wage grade level seven almost since his hiring.

Following the hearing, Kodak offered Faggiano a settlement in which it proposed to raise his wage grade to level nine and pay him a certain additional amount as well. On or

about August 8, 2001, before deciding whether to accept Kodak's proposal, Faggiano suffered injuries as the result of a motorcycle accident and was out of work on short-term disability until November 30, 2001. However, he retained counsel and, on August 29, 2001, his lawyer contacted Kodak through the human resources department to inform the company, that rather than sign the settlement agreement, Faggiano had chosen instead to pursue his rights and retain an attorney.

Faggiano, stating that he was concerned Kodak was now retaliating against him because he did not sign the settlement agreement, filed a claim with the Equal Employment Opportunity Commission ("EEOC") on October 1, 2001. In his claim, Faggiano stated that he had been treated in a discriminatory fashion based on his nationality and that he was being retaliated against for having obtained counsel to represent him. In correspondence to Faggiano dated November 18, 2002, the EEOC closed its investigation and provided Faggiano with a right to sue letter. On January 31, 2002, Faggiano filed a complaint in district court under docket No. 02-CV-6055. The case was assigned to the Honorable Michael A. Telesca. Faggiano's complaint[1] sought, inter alia, injunctive relief and punitive damages. However, Faggiano allowed his prosecution of that complaint to lapse, and the case was subsequently dismissed.[2]

---

[1]The complaint alleged essentially that "[a]s a result of defendant's willful and intentional violation of plaintiff's rights as guaranteed by 42 U.S.C. Section 1981 and 2000(e) [sic], the plaintiff has been subjected to ridicule, embarrassment, mental anguish and distress and sustained damages in a sum to be determined at trial." (Complaint ¶ 8, *Faggiano v. Kodak*, 02-CV-6055T(F) (Jan. 31, 2002).)

[2]On February 12, 2003, Judge Telesca entered an Order to Show Cause why Faggiano's complaint should not be dismissed for failure to prosecute. The docket sheet does not reflect any response to his order and on March 21, 2003, Judge Telesca entered an order dismissing Faggiano's complaint for failure to prosecute. Judgment was entered in Kodak's

(continued...)

Faggiano asserts that following the filing of his January 31, 2002 complaint with the district court, his work situation worsened. He claims that Kodak engaged in subsequent acts of retaliation, including decertifying his core skills, placing him on entry-level work in 14 Room, and denying him promotional opportunities after he returned from another period of disability (March 2002 until late June 2002). He further states that the decertification of his core skills was reflected in his performance appraisal for 2002 and that such action was taken because he had been out on disability for nine months. In addition, he claims that on or about August 29, 2002, his group leader, Freddie White ("White"), advised him that he would not be receiving the position of level 14 "Machine Unwinder" for which he claims he was qualified. Faggiano also alleges that despite the fact that his title, "Melt/Coat operator," did not change, he suffered a severe diminution of his job responsibilities which later affected his performance appraisal and, ultimately, his ranking, and, as a result, then subjected him to a reduction in force culminating in his termination. Moreover, he claims that similarly situated Kodak employees working in the 14 Room under the same supervisors, who were also out on disability for extended periods of time, were not decertified according to Kodak's policies. Consequently, he contends that decertification was applied solely to him in retaliation for engaging in protected activities.

Concluding that the adverse employment actions he described above were in retaliation for his complaints of discrimination and participation in protected activity, Faggiano filed another complaint with the EEOC on September 9, 2002. (Am. Compl. ¶ 4.) In correspondence dated November 18, 2002, the EEOC notified Faggiano that it was

---

[2](...continued)
favor on March 25, 2003.

dismissing his complaint and was providing him with a right to sue letter via U.S. First-Class Mail. Faggiano, though, does not recall the specific date on which he received the right to sue letter.

On February 18, 2003, Faggiano filed a second lawsuit against Kodak, the subject proceeding, and on March 11, 2003, he amended his complaint. That amended complaint is the one now before the Court. In the amended complaint, which contains one cause of action, Faggiano alleges several incidents of what he claims were adverse employment actions taken in retaliation for protected activity in which he engaged.[3] Those allegations include: (1) that on or about August 29, 2002, he was denied a promotion for which he was qualified; (2) that on October 10[4], 2003, he gave deposition testimony in Kodak's attorney's office in the presence of one of Kodak's representatives, Philip Tomasso ("Tomasso"), during which he identified several supervisors he claimed were responsible for discrimina-tory treatment, including Burrows; (3) that on December 8, 2003, he was confronted by Burrows and presented with a memorandum from Kodak transferring him to a job within "Film Storage," a department where he claims there was no opportunity for growth; (4) that his job in 14 Room was not eliminated and another of Kodak' s employees replaced him; (5) that if he had he not accepted the position in Film Storage, he would have been terminated; and (6) that the new position in Film Storage resulted in a decrease in his

---

[3]Plaintiff's complaint mixes factual allegations and legal conclusions, all under the heading of "First Cause of Action."

[4]In his complaint, plaintiff alleges the date of October 10, 2003. In his Statement of Facts, filed pursuant to Western District of New York Local Rule of Civil Procedure 56.1, however, he states that the first deposition took place on October 7, 2003 and that subsequent depositions were taken on October 10 and December 17 and 18, 2003. Plaintiff alleges that Kodak representative Phillip Thomasso, III, "was present at each and every deposition Plaintiff gave...." (Pl.'s Statement of Facts at 30; Faggiano Aff. ¶ 152.)

hours and, as a result, a decrease in pay. (Am. Compl. ¶¶ 8-26.)

On June 11, 2004, Faggiano states he was given notice and was terminated. He also claims he was given a general release, which he maintains Kodak required him to sign in order to receive severance benefits. The release, he states, would have required him to withdraw this lawsuit.

In addition to responding to Kodak's motion, Faggiano also seeks permission to file a second amended complaint, adding a further charge of retaliation.[5] In this regard, he claims that Kodak's purported reduction in force is not the sole reason for his termination and that, in fact, unlawful retaliation was a motivating factor.

In an affidavit filed in opposition to Kodak's motion, Faggiano claims that he engaged in the following "protected activities": peer review in December 1999; having his attorney, in a letter dated August 29, 2001, notify Kodak's human resources director that he was being represented by counsel; filing a charge of discrimination with the EEOC on October 3, 2001; filing his complaint in district court on January 31, 2002; and making numerous informal complaints to management, including complaints in the summer of 2002 to manager Larry Dagen ("Dagen") and division manager Dennis Olbrich ("Olbrich") about the disparity in wages he received during the previous year. Faggiano also alleges that he was subjected to the following adverse employment actions: being decertified and stripped of his job responsibilities after he returned from his first disability in November 2001; being denied a promotional opportunity to work in the "Mech-Op" position; and

---

[5]Magistrate Judge Payson granted Faggiano's motion to add a claim of retaliation based on his December 8, 2003 transfer to Film Storage. Faggiano was subsequently terminated, and he now seeks to add that factual allegation to his retaliation claim.

diminution of his job responsibilities affecting his performance appraisal and ultimately his ranking, subjecting him to termination during a reduction in force.

As to his decertification, Faggiano alleges that when he returned from disability in 2002, he was told he was no longer "certified" according to the definition set forth in the "Melt/Coat Progression Model." He alleges that he was told that he was required to work a minimum of 250 hours per year in the specific assignment in order to maintain his certification. He also states that it was his supervisor who determined whether he was certified. In this regard, Faggiano asserts that fellow employee Linda Phillips ("Phillips"), wage grade nine, employed in 14 Room as a Melt/Coat Operator under Barrows' supervision, had worked only in the "Gel" position from February 2003 until July 7, 2003, and was out of work for nearly half a year on disability leave thereafter. Nevertheless, Faggiano alleges that when she returned to work on or about February 16, 2004 following her disability leave, she was permitted to return to the position of "Lead Operator Material Supply" in 14 Room. On the other hand, Faggiano claims that, since he had been decertified, he was required to do entry-level work when he returned from his disability, and was no longer assigned to the lead operator position. In addition, Faggiano claims that unlike him, Phillips did not lose her core skill certification.

Faggiano further claims that Burrows, whom he contends knew that he had filed a lawsuit against Kodak, was responsible for ranking him during Kodak's layoff, which occurred in December 2003, two months after Faggiano testified at his deposition in this case. Faggiano asserts that the ranking procedure was one of Burrows' own creation and that Faggiano's prior evaluations were not used in creating a numerical subjective score of his capabilities. He further contends that as a result of having filed this lawsuit, Burrows

ranked Faggiano at a low score, and then presented him with what Faggiano labels as an ultimatum: accept transfer to a job within "Film Storage" at the same wage grade and pay as his current position, or be terminated without benefits. Faggiano accepted the transfer, and states that, despite Burrows' assurances of no change in pay, he suffered a diminution in hours worked from the previous 50 per week, with the opportunity for overtime, to 40 hours per week with no opportunity to work overtime either during the week, or on weekends. Faggiano claims that the Film Storage unit was an undesirable location and it's group leader, Mike Mortarelli ("Mortarelli"), informed him that it was "one step away from being fired." (Faggiano Aff. (Aug. 8, 2004) ¶ 175.) Faggiano also alleges that other employees with the lowest scores were terminated and received termination benefits, whereas he was transferred to Film Storage. Additionally, Faggiano asserts that Olbrich testified that Faggiano was transferred to Film Storage because he was in a position that was being eliminated or consolidated. In contrast, Faggiano claims that the positions he had previously occupied (pronto, emulsion supply & kettle wash), which Olbrich said were being eliminated or consolidated, had not, in fact, been either eliminated or consolidated as of the date of his affidavit, August 8, 2004. Further, Faggiano alleges that his former position was filled by Shawn Rice ("Rice"), who had only eight years of experience and less seniority than Faggiano.

## STANDARDS OF LAW

### *Summary Judgment Standard*

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley*, 274 F.3d 677 (2d Cir. 2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (en banc). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once that burden has been met, the burden then shifts to the non-moving party to demonstrate that, as to a material fact, a genuine issue exists. FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in

favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. FED. R. CIV. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

Of course, it is well settled that courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (citations and internal quotations omitted). In that regard, the "burden of proof that must be met to permit an employment-discrimination defendant to survive a summary judgment motion 'at the prima facie stage is de minimis,'" *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (quoting *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988). However, the general rule holds and a defendant

may not defeat a motion for summary judgment merely by relying upon "purely conclusory allegations of discrimination, absent any concrete particulars which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (citations and internal quotations omitted); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

### Civil Rights Statutes

Faggiano asserts claims under Title VII of the Civil Rights Act of 1964, which states in pertinent part,

> It shall be an unlawful employment practice for an employer — to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, condition, or privileges of employment because of such individual's race, color, religion, sex, or national origin. . . .

42 U.S.C. § 2000e et seq.

The Second Circuit has held that Title VII[6] is violated when "a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause." *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir.1993). "To establish a prima facie case of retaliation, an employee must show '[1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse

---

[6]Faggiano also makes a claim in his proposed second amended complaint under the New York State Human Rights Law, codified at New York Executive Law § 296. That statute makes it an unlawful discriminatory practice for an employer or licensing agency, because of the age, race, creed, color, national origin, sex, disability, genetic predisposition or carrier status, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment. N.Y. Exec. Law § 296(1)(A). The Court notes that the elements of Title VII and New York Discrimination Law claims "can be analyzed, for purposes of determining sufficiency of the evidence, in a manner virtually identical to those under Title VII." *Gallagher v. Delaney*, 139 F.3d 338, 345 (2d Cir. 1998).

employment action.'" *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir.1998)

(quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.1995)); *Terry v. Ashcroft*, 336

F.3d 128, 140–41 (2d Cir. 2003).

### Adverse Employment Action

In *Weeks v. New York State*, 273 F.3d 76 (2d Cir. 2001), the Second Circuit stated,

An adverse employment action is a "materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted). To be "'materially adverse,' a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id*. (internal quotation marks omitted). Such a change "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices...unique to a particular situation." *Id*. (internal quotation marks omitted) (alterations in original).

*Id*. at 85. An adverse employment action is a tangible employment action resulting in "a

significant change in employment status, such as hiring, firing, failing to promote,

reassignment with significantly different responsibilities, or a decision causing a significant

change in benefits." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

### McDonnell Douglas Analysis

Retaliation claims[7] are governed by the three-part analytical framework set forth by

the Supreme Court in *McDonnell Douglas Corp. v. Greene*, 411 U.S. 792 (1973). *Terry v.*

*Ashcroft*, 336 F.3d 128, 140–41 (2d Cir. 2003); *see also Klausner v. Industrial Risk*

*Insurers, Inc.*, No. 98 Civ. 1267 (RPP), 1999 U.S. Dist. LEXIS 10219, 1999 WL 476285,

---

[7]"New York state courts have adopted the above analysis for discrimination actions arising under the New York State Human Rights Law. *See, e.g., Matter of Miller Brewing Co. v. State Div. of Human Rights*, 66 N.Y.2d 937, 939 (1985); *O'Connor v. Frawley*, 573 N.Y.S.2d 675, 676 (1st Dep't 1991); *Ioele v. Alden Press, Inc.*, 145 A.D.2d 29, 35 (1st Dep't 1989)." *Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1046 (2d Cir. 1992).

at *3 (S.D.N.Y. July 8, 1999) (applying *McDonnell Douglas* to N.Y. Human Rights Law claim). Under the *McDonnell Douglas* standard, a plaintiff bears the burden of proof and must ultimately establish, by a preponderance of the evidence: (1) membership in a protected group; (2) qualification for a position; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 63 (2d Cir. 1997). To establish that the adverse employment action occurred under circumstances giving rise to an inference of discrimination, a plaintiff may demonstrate that "similarly situated" employees who do not share the plaintiff's protected characteristics were treated preferentially. *Id*.

Requirements for establishing a prima facie case are minimal. *See Austin v. Ford Models, Inc.*, 149 F.3d 148, 152 (2d Cir. 1998). If a plaintiff is successful in demonstrating a prima facie case, then the burden shifts to his employer to articulate a legitimate, non-discriminatory purpose for its adverse employment action. *Id*. at 153. The Second Circuit has held that "[a]ny such stated purpose is sufficient to satisfy the defendant's burden of production; the employer does not have to persuade the court that the stated purpose was the actual reason for its decision." *Austin*, 149 F.3d at 153.

Once the employer satisfies its burden, a plaintiff may prevail only if he presents evidence that the employer's proffered reasons are a pretext for discrimination. *Id*. To demonstrate pretext, a plaintiff must show both that the proffered reason was false and that discrimination was the real reason. *Id*. In a case where the Supreme Court applied the *McDonnell Douglas* criteria to an Age Discrimination in Employment Act claim, the Court

held that a plaintiff's prima facie case, combined with sufficient evidence for a reasonable

fact finder to reject the employer's nondiscriminatory explanation for its decision, may be

adequate to sustain a finding of liability for intentional discrimination. *See Reeves v.*

*Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000). Justice O'Connor, writing

for a unanimous Court, said, "[i]n appropriate circumstances, the trier of fact can

reasonably infer from the falsity of the explanation that the employer is dissembling to

cover up a discriminatory purpose." *Id.*; *see also Regional Economic Community Action*

*Program, Inc. v. United States*, 294 F.3d 35, 49 (2d Cir. 2002). "For the purposes of

defeating the defendants' motion for summary judgment, the plaintiff need only raise a

material factual issue as to whether the defendants' reason for firing the plaintiff constituted

a pretext." *Visco v. Community Health Plan*, 957 F. Supp. 381, 388 (N.D.N.Y. 1997).

Following the Supreme Court's decision in *Reeves*, the Second Circuit decided

*Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000). In *Schnabel*, the Second Circuit

determined that *Reeves* had not eliminated the possibility of summary judgment for a

defendant in discrimination cases when a plaintiff had proven a prima facie case and

offered evidence that the employer's proffered reason was false. Quoting from *Reeves*, the

Second Circuit explained that,

> In examining the impact of *Reeves* on our precedents, we conclude that
> Reeves prevents courts from imposing a per se rule requiring in all instances
> that an ADEA[8] claimant offer more than a prima facie case and evidence of

---

[8]Though *Reeves* and *Schnabel* involve the Age Discrimination in Employment Act, the cases analyze the same *McDonnell Douglas* factors applied in retaliation claims, such as the one at bar. *See Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (ADEA claims analyzed under same framework as any other Title VII claim); *Gonzalez v. New York City Transit Authority*, No. 00 CIV. 4293 SHSAJP, 2001 WL 492448 (S.D.N.Y. May 9, 2001)

(continued...)

pretext. . . . But the converse is not true; following *Reeves*, we decline to hold that no ADEA defendant may succeed on a summary judgment motion so long as the plaintiff has established a prima facie case and presented evidence of pretext. Rather, we hold that the Supreme Court's decision in Reeves clearly mandates a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Reeves*, 530 U.S. at 143 (internal quotation marks omitted); *see also Vadie v. Mississippi State Univ.*, 218 F.3d 365, 374 n. 23 (5th Cir. 2000) (concluding after *Reeves* that a prima facie case plus pretext evidence may be enough to permit a finding of discrimination, but will not always be sufficient, with the ultimate issue remaining whether the evidence in the record as a whole "creates a reasonable inference that age was a determinative factor in the actions of which plaintiff complains"). Accordingly, summary judgment might still be appropriate in this matter.

*Schnabel*, 232 F.3d at 90–91.

## DISCUSSION

### *Res Judicata*

The Court must first review Kodak's claims with regard to the res judicata implications of the first judgment. Faggiano has candidly conceded that the judgment, entered as a result of Judge Telesca's March 21, 2003 Order dismissing his prior case, is a final judgment on the merits of his first lawsuit. The Second Circuit has held that "'judgments under Rule 12(b)(6) are on the merits, with res judicata effects....' This rule is in accord with the literal language of Fed. R. Civ. P. 41(b)." *Teltronics Services, Inc. v. L M Ericsson Telecommunications, Inc.*, 642 F.2d 31, 34 (2d Cir. 1981) (quoting *Exchange National Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1130-31 (2d Cir. 1976)). Accordingly, the Court agrees with Kodak's position that the former dismissal for failure to prosecute constitutes an adjudication on the merits. *Id.* at 35; Fᴇᴅ. R. Cɪᴠ. P. 41(b); *see*

---

[8](...continued)
(applying *Schnabel* to racial discrimination case).

*Hoffman v. Wisner Classic Mfg. Co., Inc.*, 927 F. Supp. 67, 72 (E.D.N.Y. 1996). Therefore, the question remaining before the Court is whether Faggiano's retaliation claims in the present lawsuit, and the new claim of retaliation he is attempting to bring through a second amendment to his complaint, are barred by res judicata.

Res judicata is a claim preclusion doctrine, where

the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.

*Cromwell v. Sac County*, 94 U.S. 351, 352 (1876); 18 MOORE'S FEDERAL PRACTICE § 131.01. The Second Circuit has stated the rule applicable in this Circuit as follows:

The doctrine of res judicata, or claim preclusion, holds that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994). "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *NLRB v. United Technologies Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983) (citations omitted). To prove the affirmative defense a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action. *Allen*, 449 U.S. at 94; *Burgos*, 14 F.3d at 789; *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345-46 (2d Cir. 1995).

*Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 284–85 (2d Cir. 2000) (footnote omitted).

Faggiano's first complaint raised claims under Title VII, and 42 U.S.C. § 1981 on the basis of his allegation that he was "subjected to ridicule, embarrassment, mental anguish

-16-

and distress…" as a result of Kodak's alleged violation of those statutes. (Complaint (Jan. 29, 2002) ¶ 8.) The complaint sought a permanent injunction enjoining Kodak from "continuing or maintaining [t]he policy, practice, custom and usage of denying, abridging, withholding, limiting or otherwise interfering with the Faggiano's rights on the basis of merit rather than national origin." (*Id*. ¶ B.)

In his second complaint filed on February 18, 2003, a little more than a year after the first, Faggiano alleged the same discriminatory conduct that he had alleged in the first complaint, and added a claim based on retaliation. The second complaint referred to his January 2002 EEOC charge and an August 29, 2002 denial of a position at Kodak, which he alleged was a result of his refusal to settle his first case against Kodak. (Complaint (Feb. 18, 2003) ¶¶ 9, 12.) As recited above, he returned from a second disability leave period in June 2002 and learned he had been stripped of his core skills. Each of the events supporting his claim for retaliation that occurred prior to dismissal of his first lawsuit against Kodak on March 21, 2003 could have been included in the first lawsuit. In fact, his second EEOC complaint was filed on September 9, 2002, more than six months prior to the dismissal of his first complaint for failure to prosecute.

There can be no question that the parties in the present law suit are the same as in the first, and that the harassment claims raised and dismissed in the first action are merged into the first judgment, and cannot be relitigated here. The more difficult question is whether the alleged acts that took place between the filing and dismissal of the first lawsuit are precluded from relitigation in this second suit.

The decision of whether "the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue,

whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Prime Management Co., Inc. v. Steinegger*, 904 F.2d 811, 815 (2d Cir. 1990). "As articulated by the Supreme Court, application of the doctrine of res judicata serves several purposes; it 'relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication.'" *Thompson v. County of Franklin*, No. 92-CV-1258, 1996 WL 341988, at *3 (N.D.N.Y. June 18, 1996) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

In the First Circuit case of *Havercomb v. Department of Education of the Commonwealth of Puerto Rico*, 250 F.3d 1(1st Cir. 2001), two complaints were also involved, the first of which went to judgment in the plaintiff's favor, and the second of which added additional theories and facts, but was found barred by res judicata. Thus, the same issue present in the case at bar was before the Circuit Court when it wrote,

> The harder question is whether the alleged subsequent discrimination that continued from 1997 until 1999 (partially covered by a later EEOC administrative complaint filed in 1998) can properly be considered to be part of the same transaction or series of connected transactions adjudicated to a final judgment in *Havercombe I*. The verdict in *Havercombe I* was returned on February 26, 1999, and a final judgment was entered in April 1999 after defendant's motion for remittitur was granted. The trial in *Havercombe I*, however, encompassed only alleged discriminatory conduct during the period 1990-1997.

*Id. at* 4. In analyzing the issue, the First Circuit looked to the Restatement (Second) of Judgments, which provides in relevant part as follows:

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

RESTATEMENT (SECOND) OF JUDGMENTS § 24 (1982). As the First Circuit wrote, "[t]he Restatement explains this pragmatic approach as an outgrowth of the federal rules' 'considerable freedom of amendment and [the system's] … willingness to tolerate changes of direction in the course of litigation.' *Id.*, cmt. a." *Havercomb II*, 250 F.3d at 4–5. Applying the Restatement to the case before it, the First Circuit determined that, "*Havercomb I* extinguished not only the claims for the period 1990–1997 alleged in *Havercomb II* but those continuing through 1999 as well." *Id.* at 5. The Second Circuit has also relied on the Restatement (Second) of Judgments § 24 in deciding cases involving issues of res judicata. *See Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 381 (2d Cir. 2003); *AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 73 (2d Cir. 2003); *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997).

Viewing the situation here in light of the Restatement, the Court concludes that the "series of connected transactions" includes the alleged acts of retaliation that occurred prior to disposition of the first lawsuit. Each incident alleged could have been, or was, included in the first lawsuit. *See, e.g.*, Fed. R. Civ. P. 15(d) (Supplemental Pleadings); *United States v. Russell*, 241 F.2d 879, 882 (1st Cir. 1957) (A supplemental pleading "is designed to obtain relief along the same lines, pertaining to the same cause, and based on the same subject matter or claim for relief, as set out in the original [pleading]."). Faggiano's September 2002 EEOC complaint, which formed the prerequisite for suit on the retaliation

claim, had been adjudicated by EEOC on November 18, 2002, four months prior to dismissal of his first law suit. Moreover, Faggiano filed his complaint in this law suit on February 18, 2003, one month prior to dismissal of the first case. Clearly he could have added the retaliation claim by way of a motion to supplement the first complaint.

Faggiano responds that the second litigation involved different transactions, and thus, there should be no claim preclusion. He relies on *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 328 (1955). That case, however, is distinguishable. In *Lawlor*, the Supreme Court wrote, "[t]he conduct presently complained of was all subsequent to the 1943 judgment." *Lawlor*, 349 U.S. at 328. Here, by contrast, the conduct complained of primarily occurred prior to the judgment in the first law suit. In *Lawler*, the Court determined that "[w]hile the 1943 judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Id*. The situation here is substantially different from the one in *Lawler*. Faggiano could have included a retaliation claim in his first lawsuit, which was still pending when he filed his second suit against the same party, alleging the same causes of action based on discrimination along with the additional retaliation claim.

Faggiano also cites to *Greenberg v. Bd. of Governors of the Fed. Reserve Sys.*, 968 F.2d 164, 168–70 (2d Cir. 1992), but that case is likewise distinguishable. There, the Second Circuit determined that the letter issued by an administrative agency was not adjudicative and, consequently, did not bar subsequent actions. The Circuit also held that at least some of the claims in the law suit pertained to different parties than those involved in the prior administrative action. Finally, the consent order relied on by the defendants in

*Greenberg* for their res judicata argument contained language specifically stating that the order would not preclude further action.

Faggiano's reliance on *Prime Management Co. v. Steinegger*, 904 F.2d 811, 816 (2d Cir. 1990) is also misplaced for the same reason that *Lawler* is inapposite. Finally, Faggiano cites *NLRB v. United Technologies Corp.*, 706 F.2d 1254 (2d Cir. 1983). That case, too, is distinguishable, as the circuit court made clear when it wrote:

> We have little difficulty in concluding that the claim at issue in the present proceeding is not the same claim that was adjudicated in *United Aircraft*. *United Aircraft* arose out of charges that in 1968, United had discharged two union stewards and suspended another for soliciting other employees, during working hours at certain of Pratt & Whitney plants, to join the union. The present proceeding arises out of charges that in 1979, United interrogated and threatened to discipline employees at a Hamilton Standard plant when they sought to solicit funds for the families of two discharged employees. Thus, the events giving rise to the two proceedings occurred at different places, and more than a decade apart; they concerned different employees engaged in different acts; and they involved different employer conduct in response to those acts.

*Id.*, at 1260. Finally, Faggiano cites to Restatement (Second) § 24(d), which the Court has already determined supports Kodak's argument that Faggiano's claims should have been brought in one action.

Therefore, the Court concludes that Judge Telesca's dismissal of the first suit for failure to prosecute acts as a bar to the all the claims raised in this lawsuit that predate the dismissal of the first case. Thus, the only claim that survives dismissal of the first lawsuit is Faggiano's cause of action for retaliation based upon: (1) his December 8, 2003 transfer to Film Storage and the consequent reduction in his hours worked; (2) his replacement by Shawn Rice, whom Faggiano alleges had less experience and seniority; and (3) the June 8, 2004 notice that he was being terminated effective August 13, 2004.

*Summary Judgment*

As to his remaining retaliation claim based on his transfer to Film Storage with a reduction in his work hours, his replacement by Shawn Rice, and finally his termination, in order to meet his burden to prove a prima facie case, Faggiano must show: (1) participation in a protected activity known to Kodak; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *Terry v. Ashcroft*, 336 F.3d at 140-41. Although Kodak disputes that Faggiano has met any of the three requirements for a prima facie case, the Court, mindful of plaintiff's de minimis burden, finds otherwise.

As to the first, there can be no serious dispute that testifying at deposition, as Faggiano did in October of 2003, "constitutes protected activity under section 704(a)'s participation clause." *Glover v. South Carolina Law Enforcement Div.*, 170 F.3d 411, 413 (4th Cir. 1999) (*referring to* 42 U.S.C. § 2000e-3). While Kodak responds that "there is no proof that anyone at Kodak was aware of the particulars of [Faggiano's] testimony." (Kodak's Mem. of Law, at 12.), arguably, as Faggiano points out, since a representative of Kodak was present for his deposition, Kodak did have knowledge. (Faggiano Aff. ¶ 152.)[9]

---

[9]Faggiano also asserts that Burrows was deposed on December 17, 2003, and that for some time prior to being deposed, Burrows specifically had been aware of the lawsuit, during which time he "actively engaged in subjectively ranking [Faggiano] which resulted in [his] demotion…." (Faggiano Aff. ¶ 153.) However, the evidence before the Court fails to establish that Burrows was deposed on December 17, 2003. In fact, Kodak's reply included a copy of the cover page to Burrows' deposition (which had not been included with Faggiano's materials). That cover page shows conclusively that Burrows' deposition was conducted on March 11, 2004 at defense counsel's office in Rochester, New York. (Wolford Reply Aff. (# 52) ¶ 5 & Ex. 3.) Therefore, the evidentiary proof fails to establish that Burrows specifically knew about Faggiano's lawsuit on the date he offered Faggiano the transfer to Film Storage.

As to the second requisite element for a prima facie case, Faggiano must establish that he suffered an adverse employment action. On this issue, Kodak contends that the move to Film Storage was not adverse, since Faggiano's wage grade remained the same. Further, Kodak maintains that the lack of overtime opportunities did not rise to the level of an adverse employment action, citing *Como v. O'Neill*, No. 02 Civ. 0985(HB), 2002 WL 31729509, *2 (S.D.N.Y. Dec. 4, 2002) (transfer of police officer to New Jersey office obviated overtime opportunities only for a short period). However, unlike the situation in *Como*, Faggiano was not accustomed to losing opportunities for earning overtime benefits, his loss of overtime benefits does not appear to have been temporary, and his title and job duties were altered. Thus, the Court determines that Faggiano did suffer an adverse employment action when he transferred to Film Storage.

Finally, for a prima facie case, Faggiano must show a causal connection between the adverse employment action and the protected activity. Faggiano was first deposed on October 7, 2003. On December 8, 2003, within two months of first being deposed, he was transferred to Film Storage. Since a plaintiff's burden to show a prima facie case is de minimis, the Court finds that the temporal proximity here permits an inference that the adverse employment action was connected to Faggiano's participation in the deposition.

Having determined that plaintiff has established a prima facie case of retaliation, the Court must proceed to the next level of analysis under *McDonnell Douglas.* In that regard, it becomes Kodak's duty to articulate a non-retaliatory reason for its action. The ultimate burden of persuasion does not shift, though, and on this motion, it is still Faggiano's burden to show that Kodak intentionally discriminated against him. *Neratko v. Frank*, 31 F. Supp. 2d 270, 281 (W.D.N.Y. 1998).

Kodak explains that Faggiano was transferred to Film Storage "as a result of an established and objective system to implement downsizing…." (Kodak's Mem. of Law at 20.) Further, Kodak asserts that, although Faggiano's position of Material Handler II in Melt/Coat was eliminated, because of his superior ranking, he was able to bump another employee who ranked lower, continue his employment at the same pay grade, albeit in another position. The Court notes that, in its Statement of Facts[10], Kodak states that Faggiano "testified that nobody at Kodak made any statements linking his transfer to Film Storage to his prior protected activity…." (Kodak's Statement of Facts ¶ 69.) In his response, Faggiano does not dispute this assertion, but concludes that Kodak was aware of his participation in, inter alia, the deposition of October 10, 2003. Moreover, at oral argument, Faggiano's counsel contended that although her client was transferred from the 14 Room, others, similarly situated, were not. Kodak's counsel responded that twenty-eight Material Handlers, the title held by Faggiano, were moved out of the 14 Room, and that no evidence had been presented by plaintiff that someone with a comparable ranking was not moved. For example, Faggiano asserts that Shawn Rice was a similarly situated employee in the 14 Room and that he took the Kettle Wash position, which he held prior to his transfer. However, Faggiano's evidence consists of his belief that this is so, based on copies of the work assignment schedules in 14 Room. (Faggiano Dep. at 308-09.) Kodak submitted an affidavit from Colleen McVeigh, the Department Manager for 14 Room, who stated that the Kettle Wash position was eliminated, but the work still needed to be performed and other remaining employees in 14 Room were scheduled to perform it.

---

[10]Filed pursuant to Western District of New York Local Rule of Civil Procedure 56.1.

(McVeigh Aff. ¶ 3.)

Faggiano also claims that "other similarly situated Kodak employees who were out for a [sic.] longer consecutive absences than Plaintiff were neither 'decertified' according to the defendant's 'certification process,' nor placed in entry level positions upon their return." (Pl.'s Mem. of Law at 20.) Although Faggiano refers to other employees, he specifically mentions only Linda Phillips ("Phillips") in regard to his argument on decertification. (*Id.*) With regard to this issue, the Court agrees with Kodak's position that Faggiano's decertification took place prior to the first lawsuit and is barred by res judicata.

Additionally, the proof submitted on defendant's motion establishes that the downsizing selection process ("DSP") included a ranking of all employees within the operations area of the Melt Coat Division, Wage Grade M1-M3, who were compared against each other. (Conf. Ex. 27-30.) In a ranking system that assigned points to three aspects of the employees' performance, with a total of 30 points available as a top score, Rice ranked ten points higher than plaintiff. (Conf. Ex. 29 & 30.)[11]

As a result of the downsizing in late 2003, the Melt Coat Division had to be reduced by 12%, which resulted in a reduction of 98 employees from a population of 804. (Def.'s Statement of Mat'l Facts ¶ 47; Pl.'s Response ¶ 47.) In the operations area of the Melt Coat Division, there were 79 reductions planned out of a total of 613 employees. (Def.'s Statement of Mat'l Facts ¶ 47; Pl.'s Response ¶ 47). Twenty-eight of the material handler

---

[11]The Court notes that Faggiano has not sought to add a claim to his complaint based on Phillips' non-decertification (*e.g.* disparate treatment). Rather, as previously stated, the only claims now pending before the Court are: (1) his December 8, 2003 transfer to Film Storage and the consequent reduction in his hours worked; (2) his replacement by Shawn Rice, whom Faggiano alleges had less experience and seniority; and (3) the June 8, 2004 notice that he was being terminated effective August 13, 2004.

positions in the 14 Room were eliminated. (Olbrich Reply Aff. ¶ 8; Conf. Ex. 27, at 000728.) The 14 Room had to reduce each shift to 42 employees. (McVeigh Aff. ¶ 2 & Ex. 1-3.) Rice was required to switch shifts, but he remained in the position of Gel Maker. (McVeigh Aff. ¶¶ 6-7 & Ex. 2-3; Burrows Aff. ¶ 11.)

In arguing that defendant's proffered explanation is false and merely a pretext for unlawful discrimination, Faggiano essentially relies on the same information that makes up his prima facie case. In viewing that evidence again, this time with respect to plaintiff's ultimate burden of proving retaliation by a preponderance, the Court finds, in light of Kodak's articulation of a legitimate, non-discriminatory purpose for its adverse employment action, that Faggiano's proof is insufficient to show that Kodak's explanation "is dissembling to cover up a discriminatory purpose." *Reeves*, 530 U.S. at 147. Faggiano's transfer to Film Storage occurred in the context of company-wide layoffs resulting in the reduction of approximately one hundred employees in the Melt Coat Division alone. (Olbrich Aff. ¶¶ 2 & 4). The evidentiary proof in the record fails to support Faggiano's contention that he was singled out for a transfer in retaliation for his deposition testimony in October 2003. Instead, the undisputed facts establish that he was impacted along with a substantial number of other employees due to the downsizing and layoffs throughout Kodak.

### *Motion to Amend*

Faggiano's cross-motion seeking leave to file an amended complaint is also before the Court. Though not discussed in his accompanying memorandum of law, plaintiff has submitted a proposed second amended complaint seeking relief pursuant to New York State Executive Law §290 *et seq*.; (2) punitive damages; and (3) including a revised

paragraph 17, which contains the language previously rejected[12] by the Court in plaintiff's prior motion to amend. In view of the Court's decision on Kodak's motion for summary judgment, the Court concludes that amendment of the Faggiano's complaint to include a cause of action for retaliation pursuant to New York Executive Law § 290, et seq. would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend may be denied where the amendment would be futile). The Court has determined that Faggiano cannot meet his burden of proof on the Federal retaliation claim. Thus, even if the State claim had been in the original amended complaint, the analysis would be the same. Second, Faggiano has not explained why he delayed in making a claim under State law until well after the Court's deadline for amendment of the complaint. Though the Court has not granted Faggiano's motion to amend to add his termination allegations to the retaliation claim, the Court nonetheless considered that claim in its analysis and found the proof lacking to establish a causal connection. Finally, Faggiano's attempt to resubmit language in paragraph 17 that the Court previously rejected is again rejected, and his request for punitive damages is moot. Therefore, Faggiano's cross-motion to amend his complaint is denied in its entirely.

---

[12]By an Order entered on March 17, 2004 (Docket # 32), Magistrate Judge Payson, to whom this case has been referred for all pretrial nondispositive motions, permitted the addition of the following language to paragraph 17 of plaintiff's amended complaint: "That since filing his lawsuit on or about February 18, 2003, it is averred that on or about December 8, 2003 Plaintiff was subject to an adverse employment action by the defendant." In doing so, Judge Payson rejected language that plaintiff was "subject to a continuing pattern of retaliation." (*See* Wolford Aff. (Docket # 50) ¶ 5.) Plaintiff's proposed second amended complaint contains the broader language that Judge Payson previously rejected.

**CONCLUSION**

Accordingly, Kodak's motion for summary judgment (# 35) is granted, and Faggiano's cross-motion (# 47) for leave to file an amended complaint is denied.  The case is dismissed.

SO ORDERED.

Dated:   July 21, 2005
             Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge